**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC,[1] | Bankruptcy Case No. 20-12168 (CTG) |
| Debtor. | Jointly Administered |
| KENNEDY LEWIS PARTNERS MASTER FUND LP and KENNEDY LEWIS PARTNERS MASTER FUND II LP, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 22-50406 (CTG) |
| ABRY PARTNERS, LLC, APEX CREDIT PARTNERS, LLC, CIFC ASSET MANAGEMENT LLC, ELLINGTON MANAGEMENT GROUP, L.L.C., TRIMARAN ADVISORS MANAGEMENT, L.L.C., and WILMINGTON SAVINGS FUND SOCIETY, FSB, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFFS' OPENING SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. In addition to the foregoing Debtor, the "Debtors" include certain affiliated entities, a complete list of which, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports. All motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, are administered in the remaining chapter 11 case of Town Sports International, LLC, Case No. 20-12168 (CSS).

Pursuant to the supplemental briefing schedule set by the Court at the status conference on November 7, 2022, Plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II (collectively, "Plaintiffs") respectfully submit this opening supplemental brief in further opposition to Defendants'[2] motions to dismiss.[3]

This adversary proceeding[4] arises out of a disastrous $80 million credit bid by the Lender Defendants that resulted in the loss of all of the collateral for a $167 million secured loan (the "Loan") made by the Lender Defendants, Plaintiffs, and certain other lenders (collectively, "Syndicate Lenders") to Town Sports International, LLC ("Town Sports"). The Loan is governed by the Credit Agreement and Security Agreement (collectively, "Agreements"), which provide certain limited rights to the Lender Defendants, as the majority lenders under the Agreements, to take certain actions, or direct the Agent to take certain actions, that are binding on the Syndicate Lenders. Critically, Section 12.10(a) of the Credit Agreement provides that these actions must be "in accordance with the provisions of" the Agreements, and Section 7.1 of the Security Agreement provides that "only" the Agent can enforce the Security Agreement and realize upon the security granted by the Security Agreement (*i.e.*, "credit bid"), and only when "acting upon the instructions of the [Lender Defendants]." (emphasis added.) Moreover, Section 13.12(a) of the Credit Agreement restricts the Lender Defendants from "releas[ing] all or substantially all of the Collateral (except as expressly provided in the Credit Documents) under

---

[2] "Defendants" refers to Wilmington Savings Fund Society, FSB (the "Agent") and Abry Partners, LLC, Apex Credit Partners, LLC, CIFC Asset Management LLC, for and on behalf of funds and accounts managed and/or advised by it, Ellington Management Group, L.L.C., on behalf of certain funds and accounts, and Trimaran Advisors Management, L.L.C., as investment manager (collectively, the "Lender Defendants").

[3] *Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 47 & ECF No. 50 (the "Motions to Dismiss").

[4] Plaintiffs initially commenced this action in the United States District Court for the Southern District of New York (the "SDNY District Court"), by the filing of Plaintiffs' Complaint [ECF No. 1], which includes a jury trial demand. By its Order entered August 17, 2022 [ECF No. 61], the SDNY District Court, acting on Defendants' motions, transferred venue of this case to the United States District Court for the District of Delaware (the "Delaware District Court"). Thereafter, citing to its Amended Standing Order of Reference Re: Title 11 dated February 29, 2012, on September 6, 2022, the Delaware District Court, entered an order [ECF No. 68] referring this case to this Court. Plaintiffs continue to maintain their demand for a jury trial and respectfully do not consent to the entry of final orders or judgment by this Court.

all the Security Documents" without the consent of each of the Syndicate Lenders. In other words, Lender Defendants cannot release such collateral except as expressly provided in the Agreements, *i.e.*, by instructing the Agent. Finally, Section 12.02(a) of the Credit Agreement provides that the Agent is liable if it commits gross negligence in carrying out its duties.

In spite of these restrictions, Lender Defendants credit bid the Loan in the Town Sports bankruptcy proceeding without instructing the Agent. And they did so without obtaining legally enforceable commitments from their counter-party. As a result, Lender Defendants credit bid the Loan and released all of the collateral backing it for, in their own words, "zero value."[5]

Lender Defendants tried to stop the credit bid by filing an Emergency Motion in this Court.[6] Judge Sontchi held a hearing ("Emergency Motion Hearing") and denied the Emergency Motion from the bench, ruling that the credit bid had always been contemplated as part of the sale of Town Sports' assets, and as a result, "the transfer of the right to credit bid[] ha[s] already occurred."[7] In other words, Judge Sontchi ruled that the credit bid had already occurred as a matter of fact or, if not, "deemed" the credit bid to have occurred as a matter of equity.[8] At bottom, Judge Sontchi's ruling that the transfer of the credit bid had occurred despite Lender Defendants admitted failure to instruct the Agent confirms that they breached the Agreements.

In their Motions to Dismiss, Defendants argue, *inter alia,* that 1) a "no-action" clause contained in the Agreements prevents the Plaintiffs from enforcing their rights; 2) Plaintiffs fail to allege a breach of any provision of the Agreements; and 3) Defendants are insulated from

---

[5] As noted in Plaintiffs' opposition brief, the requirement that the Agent make the credit bid is important because the Agent is prohibited from performing its duties with gross negligence. Opposition to MTD, *Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 53 at 19.

[6] Emergency Motion, *Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 49-8.

[7] 11/30/2020 Hearing Tr. from *In re Town Sports Int'l, LLC, et al.,* Case No. 20-12168 (CSS) (Bankr. D. Del.). *See Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 49-10 at 27:5–6.

[8] *Id.* at 27:19–22.

liability by Judge Sontchi's ruling on the Emergency Motion. In their opposition briefs, Plaintiffs rebutted these arguments. First, as several courts have previously ruled, the "no-action" clause does not bar lawsuits like this one where the minority lenders sue the majority lenders and/or the agent for breach of the loan agreements.[9] Second, Defendants breached Sections 12.02(a), 12.10(a), and 13.12(a) of the Credit Agreement and Section 7.1 of the Security Agreement by causing the credit bid of the Loan without an instruction having been provided to the Agent. *Id*. at 17–21. Third, Judge Sontchi's written order ("Emergency Motion Order")[10] and ruling at the Emergency Motion Hearing did not address – *or even mention* – whether an instruction by the Lender Defendants had been given to the Agent, which Defendants themselves agree did not happen. *Id*. at 10–13. This opening supplemental brief provides additional authority that has issued since the motion to dismiss briefing was completed that further supports these three points.

First, in *LCM XXII Ltd. v. Serta Simmons Bedding, LLC* ("*Serta*"), minority lenders brought suit against majority lenders for breach of contract. 2022 WL 953109 (S.D.N.Y. Mar. 29, 2022). In *Serta*, the majority lenders agreed to provide new financing to the borrower in exchange for obtaining priority for the majority lenders' newly issued and exchanged debt over the old debt held by the minority lenders. *Id*. at 3–4. The minority lenders alleged that the transaction violated their rights under the loan agreement, which provided that first-lien lenders were entitled to payments on a *pro rata* basis with other first-lien lenders. *Id*. The court strictly applied the terms of the agreement and denied the majority lenders' motion to dismiss "on the grounds that the Transaction constituted an impermissible loan repurchase that did not occur in

---

[9] Opposition to MTD, *Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 53 at 15–17.

[10] ECF No. 721 from *In re Town Sports Int'l, LLC, et al.,* Case No. 20-12168 (CSS) (Bankr. D. Del.). *See Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 49-12.

the open market," as required by the agreement. *Id*. at 9.

As in this case, the majority lenders in *Serta* argued that the "no-action" clause in the loan agreement, which is similar to the one Defendants rely on here, required dismissal of the minority lenders' claims. *Id*. at 14. The court rejected this argument, finding that the "no-action" clause did not require dismissal since "Plaintiffs are not demanding payment on their loans or seeking to enforce any guaranty under the Agreement" but "rather, they seek damages and injunctive relief stemming from an allegedly improper transaction." *Id*. Similarly, here, Plaintiffs do not seek recovery from the borrower, but instead bring claims against the Defendants for violating the terms of the Agreements, as Plaintiffs are permitted to do.

This Court addressed a similar dispute between majority and minority lenders in *In re: TPC Group Inc.*, 2022 WL 2498751 (Bankr. D. Del. July 6, 2022) ("*TPC*"). As in *Serta*, the majority lenders in *TPC* asserted that the "no-action" clause barred the claims by the minority lenders. This Court rejected the majority lenders' argument, holding that a "no-action" clause cannot be read to preclude claims that the loan agreement provides to minority lenders. *Id*. at 8–9 (finding that such a reading would render the loan agreement's consent provisions "meaningless"). This holding is consistent with Plaintiffs' position that they can bring claims against the Lender Defendants for violating the Agreements' terms and the Agent for gross negligence. Otherwise, in a situation such as this, the subject contractual terms would be meaningless and Defendants could freely breach the Agreements with impunity.

Finally, in *ICG Global Fund 1 DAC v. Boardriders Inc.* ("*Boardriders*"), involving another so-called "uptier" transaction by the majority lenders, the New York Supreme Court rejected the majority lenders' argument that the suit was barred by a "no-action" clause. No. 655175/2020 (Sup. Ct. N.Y. Cnty. Oct. 17, 2022). Specifically, the court held, *inter alia*, that a "no-action" clause that "only prohibits actions against the Company or any other obligor concerning 'any Collateral or any other property of the Borrower'" was inapplicable, as it is in

this case, because the plaintiffs were "not seeking to enforce any liens against the collateral or any other Company property." *Id*. at 16. The court similarly refused to dismiss the minority lenders' breach claims, explaining that "the question is whether the Credit Agreement *utterly refutes* plaintiffs' claims," and concluding that it did not. *Id*. at 19 (emphasis added).

In *Serta, TPC,* and *Boardriders*, the minority lenders sued the majority lenders for violating the terms of the loan agreements, like Plaintiffs do here.[11] In *TPC*, this Court found that the majority lenders' actions complied with the Agreements, unlike in *Serta* and *Boardriders*. But regardless of the outcome, in their rulings, the *Serta* and *Boardriders* courts and this Court emphasized the paramount importance of the words of the contracts and the need for compliance with their terms. *Serta,* 2022 WL 953109, at *6–9; *TPC*, 2022 WL 2498751, at *9–12; *Boardriders*, No. 655175/2020, at 19. In *Serta* and *Boardriders*, the courts wrestled with the undefined meaning of an "open market purchase" and found it, at minimum, to be ambiguous. *Serta,* 2022 WL 953109, at *7–9; *Boardriders*, No. 655175/2020, at 20–23. In *TPC*, this Court relied on "'the customs, practices, usages and terminology as generally understood in the particular trade or business'" to determine whether the conduct at issue implicated the "sacred rights" that required unanimous consent. 2022 WL 2498751, at *11. *Importantly*, no such ambiguity exists (as in *Serta and Boardriders*) and there is no need to rely on customs and practices of the industry (as in *TPC*) to interpret the contractual provisions at issue in this case. In particular, it is clear and undisputed that, under the Agreements, <u>only</u> the Agent can credit bid the Loan <u>pursuant to an instruction of the Lender Defendants</u>.[12] It is also

---

[11] To the extent Defendants try to distinguish this supplemental authority on the specific facts of these cases, that is beside the point. Irrespective of the specific transactions and conduct at issue, the fact remains that these three cases concern claims by minority lenders against majority lenders in syndicated loans, and the presiding courts uniformly rejected majority lenders' attempts to use the "no-action" clause to defeat the claims and strictly construed the terms of the loan agreements to determine if the majority lenders' conduct breached the agreements.

[12] Credit Agreement, *Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, C.A. No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 1-1 at § 13.12(a).

clear and undisputed that no such instruction was given.

In the face of this breach of the Agreements, Defendants are forced to argue that Judge Sontchi found that an instruction occurred and that the credit bid was authorized by the Agreements. But this is belied by a plain reading of the transcript of the Emergency Motion Hearing[13] and the Emergency Motion Order. Judge Sontchi simply made no such ruling. *In fact, Judge Sontchi never even uttered the word "instruction" in his ruling or Order.* That is no surprise. The dispute before Judge Sontchi was between the Debtors and the Lender Defendants and concerned whether the credit bid had occurred, so that the sale of the Debtors' assets could proceed as planned. Whether an instruction had been given was not addressed by Judge Sontchi, and was beside the point. As Judge Sontchi made clear, it was too late to stop the credit bid, as it had been committed to months ago and the entire proceeding was premised on it occurring. 11/30/2020 Hearing Tr., at 27:4–28:14. As a result, Judge Sontchi ruled that the transfer of the credit bid to NewCo had occurred and authorized NewCo to contribute the credit bid to Town Sports at the closing of the asset sale. Simply put, Judge Sontchi's rulings do not address Defendants' breaches of the Agreements and do not insulate Defendants from liability.

[Continued on next page]

[13] 11/30/2020 Hearing Tr. from *In re Town Sports Int'l, LLC, et al.,* Case No. 20-12168 (CSS) (Bankr. D. Del.). *See Kennedy Lewis Partners Master Fund LP et al. v. Abry Partners, LLC, et al.*, No. 1:21-cv-04690 (S.D.N.Y. 2021), ECF No. 49-10 at 27:5–6.

Plaintiffs respectfully request that the Court enforce the terms of the Agreements and deny Defendants' Motions to Dismiss.

Dated: November 21, 2022
Wilmington, Delaware

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Gregory W. Werkheiser*
Gregory Werkheiser (DE Bar No. 3553)
Jennifer Hoover (DE Bar No. 5111)
1313 North Market Street, Ste. 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Email: gwerkheiser@beneschlaw.com
jhoover@beneschlaw.com

-and-

**MCKOOL SMITH P.C.**
Kyle A. Lonergan (admitted *pro hac vice*)
James H. Smith (admitted *pro hac vice*)
One Manhattan West, 50th Floor
395 9th Avenue
New York, NY 10001
Telephone: (212) 402-9400
Email: klonergan@mckoolsmith.com
jsmith@mckoolsmith.com

John Sparacino (admitted *pro hac vice*)
600 Travis St # 7000
Houston, TX 77002
Telephone: (713) 485-7300
Email: jsparacino@mckoolsmith.com

*Counsel for Plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP*