UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE

-----------------------------------------------------------x

In re:

TOWN SPORTS INTERNATIONAL, LLC

Debtors.

KENNEDY LEWIS PARTNERS MASTER
FUND LP AND KENNEDY LEWIS
PARTNERS MASTER FUND II,

               Plaintiffs,

     -against-

ABRY PARTNERS, LLC, APEX CREDIT
PARTNERS LLC, CIFC ASSET
MANAGEMENT LLC, ELLINGTON
MANAGEMENT GROUP, L.L.C.,
TRIMARAN ADVISORS MANAGEMENT,
L.L.C., AND WILMINGTON SAVINGS
FUND SOCIETY, FSB,

            Defendants.

-----------------------------------------------------------x

Chapter 11

Bankruptcy Case No. 20-12168 (CTG)
Jointly Administered

Adv. Pro. No. 22-50406 (CTG)

**THE LENDER DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

LEGAL STANDARD........................................................................................... 4

ARGUMENT ..................................................................................................... 5

I.      No Fact or Law Has Changed Since Lender Defendants' Motion to Dismiss in
        the Southern District of New York. ................................................................ 5

II.     Under Third Circuit Law, Plaintiffs' Complaint Remains Barred by the
        Doctrines of *Res Judicata* and Collateral Estoppel. ........................................ 5

III.    The Law of the Case Doctrine Further Requires the Court to Dismiss. ......................... 8

IV.     Third Circuit Courts Stringently Apply No-Action Clauses.......................................... 9

CONCLUSION.................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................5

*Benjamin ex rel. Yock v. Dept. of Pub. Welfare of Pennsylvania,*
  701 F.3d 938 (3d Cir. 2012) ...................................................................................8

*Casey v. Planned Parenthood,*
  14 F.3d 848 (3d Cir. 1994) .....................................................................................8

*CoreStates Bank, N.A. v. Huls Am., Inc.,*
  176 F.3d 187 (3d Cir. 1999) ...................................................................................6

*In re Energy Future Holdings Corp.,*
  546 B.R. 566 (Bankr. D. Del. 2016) .......................................................................8

*In re EP Liquidation, LLC,*
  583 B.R. 304 (Bankr. D. Del. 2018) .......................................................................6

*In re G–I Holdings, Inc.,*
  514 B.R. 720 (Bankr. D.N.J. 2014), *aff'd*, 654 Fed. Appx. 571 (3d Cir. 2016) .......................7

*ICG Global Loan Fund 1 DAC v. Boardriders, Inc.,*
  2022 N.Y. Slip Op. 33492(U), 2022 WL 10085886 (Sup. Ct., N.Y. Cnty. Oct. 17, 2022).....10

*Lutz v. Portfolio Recovery Associates, LLC,*
  49 F.4th 323 (3d Cir. 2022) ....................................................................................5

*McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan,*
  686 Fed. Appx. 118 (3d Cir. 2017) .........................................................................6

*Peak Partners, LP v. Republic Bank,*
  191 Fed. Appx. 118 (3d Cir. 2006) (unpublished) ...............................................9, 10

*In re Radnor Holdings Corp.,*
  564 B.R. 467 (D. Del. 2017), *aff'd*, 706 Fed. Appx. 94 (3d Cir. 2017) (unpublished) .........8, 9

*Radovich v. L.P. YA Global Invs., L.P.,*
  570 F. Appx 203 (3d Cir. 2014) ..............................................................................6

*Raytech Corp. v. White,*
  54 F.3d 187 (3d Cir. 1995) .....................................................................................7

*RBC Cap. Mkts, LLC v. Educ. Loan Tr. IV*,
    CIV.A. 6297-CS, 2011 WL 6152282 (Del. Ch. Dec. 6, 2011)..........................................9, 10

*In re Temtechco, Inc.*,
    No. 95-00596, 1998 WL 887256 (Bankr. D. Del. Dec. 18, 1998)............................................7

*Williamson v. Columbia Gas & Elec. Corp.*,
    186 F.2d 464 (3d Cir. 1950)......................................................................................................6

Pursuant to the Court's direction at the November 7, 2022 status conference, Defendants Abry Partners, LLC, Apex Credit Partners LLC, CIFC Asset Management LLC, Ellington Management Group, L.L.C., and Trimaran Advisors Management, L.L.C. (collectively, the "Lender Defendants") respectfully submit this Supplemental Memorandum of Law in Further Support of their Motion to dismiss this action, which was recently transferred to this Court from the Southern District of New York.[1]

## PRELIMINARY STATEMENT

Plaintiffs' claims could and should have been raised two years ago before Judge Sontchi, whose clear orders finally and expressly ruled against them.  Perhaps knowing their theories would be summarily rejected by a court with intimate knowledge of the case, Plaintiffs brought them to a different judge in a different forum.  But the Honorable Judge Andrew Carter saw through Plaintiffs' gambit and directed the case back to this court because "[t]he claims at issue here turn on the interpretation of the bankruptcy court's orders."  Now that the matter is properly before this Court, the time has come to dispense with Plaintiffs' procedural maneuvering, apply Judge Sontchi's orders, and dismiss this action with prejudice.

In November 2020, Judge Sontchi ordered that the sale of the debtors' assets in this action, including NewCo's use of a credit bid, shall close.  Judge Sontchi did so having been presented the exact same issues, in the exact same documents, with respect to the exact same provisions, before the exact same parties, in Plaintiffs' instant Complaint.  Plaintiffs and the Lender Defendants were secured creditors of Town Sports.  Lender Defendants, the majority lenders, partnered with third-party Tacit Capital, who would acquire the assets of the company by funding

---

[1]    The Lender Defendants respectfully submit copies of key documents from the transferred action, entitled *Kennedy Lewis Partners Master Fund LP v. Abry Partners, LLC*, 21-cv-04690-ALC (S.D.N.Y.) (the "SDNY Action") as Exhibits A through E to this brief.

certain debtor in possession financing, assuming that debtor in possession financing at NewCo, and contributing additional cash to NewCo.  Ex. B at 8–9 (Lender Defs.' Opening Brief, *Kennedy Lewis Partners Master Fund LP v. Abry Partners,* LLC, 21-cv-04690-ALC (S.D.N.Y. Aug. 30, 2021), ECF 48).  As part of this sale structure, the majority prepetition lenders would credit bid $80 million of their pre-petition secured indebtedness in exchange for a small minority equity stake in NewCo and some junior debt to be issued by NewCo.  Ex. B at 8.  In early November 2020, following a bidding procedures hearing and a sale hearing where all parties were present and represented, Judge Sontchi approved the sale agreement.  Shortly thereafter, however, third-party funding arrangements with Tacit Capital fell apart, and Tacit Capital transferred its equity ownership in NewCo to a different third-party (Peak) in order to try to consummate the sale transaction before Town Sports ran out of cash.  Ex. B at 10.

Following a chambers conference, and at the instruction of Judge Sontchi as to how to proceed, Lender Defendants sought to enjoin this new third party from consummating the sale transaction and briefed and argued at an Emergency Sale Hearing (which Plaintiffs, represented by counsel, attended) that the sale could not close because the Lender Defendants had not yet "instructed" the transfer of the credit bid to NewCo.  Judge Sontchi *rejected* this theory and held, as a "matter of law," that Lender Defendants *had* transferred the right to credit bid to NewCo and that NewCo (not the Lender Defendants) was authorized to credit bid to close the sale.  Dkt. 777 at 27.  Judge Sontchi's Second Sale Order explicitly states that *NewCo* was "authorized to contribute the Credit Bid Consideration at closing of the sale." Dkt. 721 at 2.  Judge Sontchi added "to the extent it didn't already occur . . . I deemed it as a matter of law and to the extent I have to exercise equitable power here it did occur." *Id.* (emphasis added).  Accordingly, the sale closed with all lenders—Lender Defendants as well as Plaintiffs—receiving equal pro rata shares of a

20% stake in the equity of NewCo as consideration.  The Second Sale Order was by its terms a "final order."  Dkt. 721 at 1.

Plaintiffs have been represented in this case since it filed September 2020 (Dkt. 23), and participated or had the opportunity to participate in each step of the sale process.  Despite attending the bidding procedures hearing, the sale hearing, and the Emergency Sale Hearing, Plaintiffs never objected.  Plaintiffs never filed a brief on the issues, nor did they appeal Judge Sontchi's Second Sale Order, which they now assert caused a breach of contract.  Instead, Plaintiffs attempted to circumvent the Bankruptcy Court's jurisdiction by filing a Complaint in the Southern District of New York.  Ex. B at 12–13.

The Complaint boils down to the allegation that Lender Defendants did not instruct the Collateral Agent to credit bid—the exact opposite of what Judge Sontchi had ruled occurred five months prior.  Lender Defendants filed for a motion to dismiss or in the alternative a transfer back to this District in order for the Bankruptcy Court to preside over issues core to its docket.  Judge Carter agreed the issues in the Complaint are "core" to the bankruptcy proceeding and will "require [the presiding court] to interpret [Judge Sontchi's] bankruptcy court orders."  Accordingly, Judge Carter transferred Plaintiffs' action back to the District of Delaware.  Ex. E at 10 (Oral Opinion Tr., *Kennedy Lewis Partners Master Fund LP v. Abry Partners, LLC*, 21-cv-04690-ALC (S.D.N.Y. Aug. 17, 2022), ECF 62).  The case is now ripe for dismissal for the following reasons:

***First***, no fact or law has changed since Lender Defendants' first filed to dismiss Plaintiffs' claims in August 2021.  Indeed, Lender Defendants' motion to dismiss is only strengthened by Judge Carter's determination that a ruling on this action requires an interpretation of Judge Sontchi's bankruptcy court orders.  A review and application of the plain text of Judge Sontchi's orders belies Plaintiffs' allegations and demonstrates that dismissal is required.

***Second***, dismissal is required under the doctrines of *res judicata* and collateral estoppel, which apply with equal force in the Third Circuit as in the Second Circuit. The claims and issues raised in Plaintiffs' Complaint are precluded from relitigation as they arise from the same underlying facts and identical issues actually litigated before Judge Sontchi in November 2020. Ex. B at 13–18; Ex. D. at 3 (Lender Defs.' Reply Br., *Kennedy Lewis Partners Master Fund LP v. Abry Partners*, LLC, 21-cv-04690-ALC (S.D.N.Y. Aug. 30, 2021), ECF 56).

***Third,*** the "law of the case" doctrine now also applies and bars relitigation of the issues of law already determined in this bankruptcy court proceeding, including Judge Sontchi's determination of the credit bid authorization question. Plaintiffs' claims would require the court to revisit and upset its previous rulings on issues of law—an outcome that Plaintiffs forfeited by failing to appeal Judge Sontchi's Second Sale Order.

***Fourth***, Delaware Courts construing New York law have long barred actions such as these in violation of a majority-rules "no-action" clause. The no-action clause contained in parties' Security Agreement pliantly prohibits this lawsuit. Plaintiffs represent only a minority lender, they are not the Collateral Agent, and the claims in this lawsuit are an attempt to enforce the security agreement vis-à-vis a claim requiring the Court to interpret the remedy provisions contained therein. Ex. B at 18–20. Plaintiffs fail to assert any applicable exception to this no-action clause. Ex. D at 6–7.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court first requires an articulation of the elements of the claim, second, disregards any "formulaic recitation of the elements of a ... claim" or conclusory allegations, and

third, "evaluates the plausibility of the remaining allegations." *Lutz v. Portfolio Recovery Associates, LLC*, 49 F.4th 323, 327–28 (3d Cir. 2022) (internal citations omitted).

**ARGUMENT**

I. **No Fact or Law Has Changed Since Lender Defendants' Motion to Dismiss in the Southern District of New York.**

There have been no new factual developments in this case since Lender Defendants filed their motion to dismiss on August 31, 2021. Likewise, there have been no significant changes on the Bankruptcy Docket related to the underlying issues of this dispute. Accordingly, Lender Defendants expressly incorporate the attached Motion to Dismiss briefing originally filed in *Kennedy Lewis Partners Master Fund LP v. Abry Partners, LLC*, 21-cv-04690-ALC (S.D.N.Y.) and the arguments therein. Exs. B, D. Credit bidding is the statutory remedy that was authorized in both sale orders. And Judge Sontchi's Second Sale Order explicitly provided that the specific credit bid in question could be made—and that the right to credit bid was, as a matter of law, transferred to NewCo. In effect, Lender Defendants cannot have violated the Credit Agreement because Lender Defendants did not—nor could they have after the right was transferred to NewCo—credit bid the debt. For this and other simple reasons,[2] the action should be dismissed.

II. **Under Third Circuit Law, Plaintiffs' Complaint Remains Barred by the Doctrines of *Res Judicata* and Collateral Estoppel.**

This action should additionally be dismissed as barred by the doctrines of *res judicata* and collateral estoppel, which apply with equal force in the Third Circuit as they do in the Second Circuit. In the Third Circuit, a "party seeking to invoke res judicata must establish three elements: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies, and

---

[2]     For example, in the SDNY Action, Plaintiffs failed to allege duty, breach, causation, or damages—all required for any breach of contract claim—because they pled no act or omission *by the Lender Defendants* with respect to instructing the Collateral Agent that would have resulted in a better outcome or even a different outcome. Ex. B at 20–23; Ex. D at 7–9.

5

(3) a subsequent suit based on the same cause of action." *McLaughlin v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, 686 Fed. Appx. 118, 121 (3d Cir. 2017) ("Dismissal for failure to state a claim is appropriate when it is obvious, either from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim."). Courts in the Third Circuit do not apply a specific test for defining a "cause of action" but instead instruct that courts should focus "on the central purpose of the doctrine of *res judicata*." *In re EP Liquidation, LLC*, 583 B.R. 304, 315 (Bankr. D. Del. 2018). And the Third Circuit has long considered that "[t]he purpose [of] *res judicata* is to end litigation" and "parties should not have to litigate issues which they have already litigated or had a reasonable opportunity to litigate." *Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469-70 (3d Cir. 1950). If a claim is based on the same "underlying events giving rise to the ... [prior] claims," it will be deemed the "same cause of action." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). *See, e.g.*, *Radovich v. L.P. YA Global Invs., L.P.*, 570 F. Appx 203, 207–08 (3d Cir. 2014) (holding claim in adversary proceeding barred as *res judicata* when the claims required the court to review the same transaction documents that the court reviewed in the bankruptcy action).

As in *Radovich*, Plaintiffs here are barred from structuring a claim around the same contract provisions Judge Sontchi already interpreted in the Sale Motion Hearing. Ex. B at 7–12, Ex. D at 3–5. Judge Sontchi reviewed the same provisions of the same contracts and even invited parties to object or respond to the arguments related to the issue of the credit bid authorization. *See* Dkt. 651 at 8 ("Does anyone wish to be heard? (No verbal response)[.]"); Dkt. 777 at 18 ("Does anyone else wish to be heard before I turn it over for reply? (No verbal response)[.]"). Plaintiffs were present but raised no argument or appeal on the issue. Ex. B at 9–11. Judge Sontchi's ruling that the credit bid was authorized is final – and has been for two years. *See In re G–I Holdings, Inc.*,

514 B.R. 720, 747 (Bankr. D.N.J. 2014), *aff'd*, 654 Fed. Appx. 571 (3d Cir. 2016) ("A bankruptcy

court's order of confirmation is treated as a final judgment with *res judicata* effect.").

For similar reasons, Plaintiffs are also barred under the principle of Collateral Estoppel

from relitigating the specific issue of whether the Collateral Agent was authorized to contribute

the secured claims and related right to credit bid already resolved by the Bankruptcy Court. *See*

Ex. B at 15–17. In the Third Circuit, issue preclusion or collateral estoppel applies where "(1) the

identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous

determination was necessary to the decision; and (4) the party being precluded from re-litigating

the issue was fully represented in the prior action." *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d

Cir. 1995); *see In re Temtechco, Inc.*, No. 95-00596, 1998 WL 887256, at *16 (Bankr. D. Del.

Dec. 18, 1998) ("As is evident in the record . . . the allegations of fraud were identical to the

objections that were made at the . . . sale hearing" and "fall[] within the doctrine of collateral

estoppel." (citations omitted)).

Here, the credit bid authorization was central to the underlying litigation at the Emergency

Sale Hearing and is precluded under Collateral Estoppel. Ex. B at 16. In the Emergency Sale

Hearing, the court accepted briefing, reviewed the underlying Credit Agreement and Security

Agreement, heard arguments (that Plaintiffs attended), and ultimately ruled, that the credit bid was

authorized. Ex. B at 8–9. Plaintiffs even admit the Lender Defendants argued the same factual

and legal positions (and cited the same contractual provisions) that Plaintiffs cite now. *See* Ex. C.

at 11 &14 n.7, Plaintiffs' Opp'n to Lender Defs.' Opening Br., *Kennedy Lewis Partners Master

Fund LP v. Abry Partners*, LLC, 21-cv-04690-ALC (S.D.N.Y. Oct. 4, 2021), ECF 53). The

authorization issue was *the* central argument in the Emergency Sale Hearing and is therefore barred

from reconsideration pursuant to the principles of Collateral Estoppel.

III.    **The Law of the Case Doctrine Further Requires the Court to Dismiss.**

The rightful return of this case to the Bankruptcy Court further requires dismissal because Judge Sontchi's prior rulings are the "law of the case."  The law of the case doctrine bars re-litigating "matters once decided during the course of a single continuing lawsuit."  *In re Radnor Holdings Corp.*, 564 B.R. 467, 483 (D. Del. 2017), *aff'd*, 706 Fed. Appx. 94 (3d Cir. 2017) (unpublished) (*citing Casey v. Planned Parenthood*, 14 F.3d 848, 856 (3d Cir. 1994) (citation omitted).  A court's decision upon a rule of law "should continue to govern the same issues in subsequent stages in the same case.'"  *Benjamin ex rel. Yock v. Dept. of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 949 (3d Cir. 2012).  In effect, the law of the case doctrine "promotes the finality and efficiency of the judicial process by protecting against the continued litigation of settled issues."  *In re Energy Future Holdings Corp.*, 546 B.R. 566, 585 (Bankr. D. Del. 2016).  This Court has previously barred relitigation of a sale order on this ground.  *See, e.g.*, *In re Radnor Holdings Corp.*, 564 B.R. at 482 (precluding relitigation of issues resolved in prior bankruptcy proceedings (*i.e.* Sale Order) under the doctrine of the law of the case).

Plaintiffs' claims here are similarly barred under the law of the case doctrine.  In the Emergency Sale Motion Hearing, Judge Sontchi stated on the record that "the transfer of the right to credit bid[] ha[d] already occurred." *See* Dkt. 777.  Judge Sontchi added "to the extent it didn't already occur . . . I deemed it as a ***matter of law*** and to the extent I have to exercise equitable power here it did occur."  *Id.* (emphasis added); *see* Ex. B at 11.  As in *In re Radnor*, Plaintiffs have "not asserted a single new fact or argument which the [Judge Sontchi] had not already considered and rejected" in issuing the Sale Order.  *Id.* at 477.  Again, Plaintiffs rely on the same theory Lender Defendants presented to the court and on the same provisions of the same contracts.  Ex. B at 8.  Like the plaintiffs in *In re Radnor,* Plaintiffs were merely "taking a run at a [new] judge" when they filed in New York because they are unsatisfied with the outcome of the

bankruptcy proceeding. *Id.* The case is now back before the bankruptcy court, and the law of the case doctrine instructs that credit bid authorization issues have been put to rest.

**IV.    Third Circuit Courts Stringently Apply No-Action Clauses.**

Plaintiffs' breach of contract claims must be dismissed under the applicable no-action clause. Ex. B at 18–20. Delaware Courts interpreting no-action clauses governed by New York law catalog the importance "in ensuring that lawsuits affecting noteholders and issuers are only brought if there is substantial support from the noteholders as a class, and in ensuring that such lawsuits are prosecuted in the best interest of all noteholders." *RBC Cap. Mkts, LLC v. Educ. Loan Tr. IV*, CIV.A. 6297-CS, 2011 WL 6152282, at *2 (Del. Ch. Dec. 6, 2011).

Courts in the Third Circuit regularly dismiss actions brought in violation of no-action clauses. For example, in *Peak Partners, LP v. Republic Bank*, the Third Circuit held that a plaintiff was required to satisfy an indenture's no-action clause before bringing negligence claims against trust's servicer. Peak claimed that a no-action clause would not apply because the negligence claims were not "with respect to this Indenture" and does not seek any "remedy" under the terms of the Indenture. 191 Fed. Appx. 118, 127 (3d Cir. 2006) (unpublished). The court, applying New York law, held that "no matter what legal theory a plaintiff advances, if the trustee is capable of satisfying its obligations, then any claim that can be enforced by the trustee on behalf of all bonds, . . . is subject to the terms of a no-action clause of this type." *Id*

In the Security Agreement here, Plaintiffs "expressly acknowledge[d] and agree[d]" that, other than the Collateral Agent acting upon the instructions of the majority of lenders, "***no other Secured Creditor shall have the right individually to seek to enforce or to enforce this agreement***[.]" Ex. A § 7.1 (Security Agreement dated November 15, 2013). Plaintiffs' lawsuit to enforce the Security Agreement violates all three conditions of the applicable no-action clause: only the Collateral Agent may sue to enforce the Security Agreement; the Collateral Agent may

act only "upon the instructions of the Required Secured Creditors" (majority of lenders); and no party has the "right individually to seek to enforce or enforce" the Security Agreement. Plaintiff is not the collateral agent; the "Required Security Creditors" never instructed the Collateral Agent to bring the suit; and Plaintiff waived its right to individually enforce the agreement. Having failed to meet *any* requirement the no-action clause bars this suit. *See RBC Capital Markets,* 2011 WL 6152282, at *2 ("Because RBC has not pled that it has met any of the conditions precedent to suit required by the no-action clause, I dismiss all of RBC's claims.").

Plaintiffs fail to allege any applicable exception to the no-action clause. Ex. B at 19–20, n. 20. Plaintiffs' attempt to raise the "trustee-misconduct" exception doubly fails, not only because Lender Defendants are not trustees or agents (they are fellow creditors), but also because no plausible "misconduct" is or can be alleged here, when *all* creditors received equal pro-rata shares in the relevant transaction.[3] Similarly, Plaintiffs cannot point to any "expressly granted" minority rights that the majority's conduct breached: they are simply unhappy with the economic results of the sale. *Cf. Bayside Capital Inc. v. TPC Group Inc.* (In re TPC Group Inc.), No. 22-50372 (CTG) (Bankr. D. Del. July 6, 2022) (recognizing the importance of no-action clauses and noting only that they do not overcome rights *expressly granted* to minority creditors).

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all causes of action against the Lender Defendants.

---

[3]     The end result of the sale of Town Sports is distinct from uptier transactions where majority-lenders amend a no-action clause without participation of the minority-lenders or where majority-lenders enter a transaction that obstructs equal payment provisions or "sacred rights" of minority lenders. Here, all parties agreed to the no-action clause and all parties were treated equally in receiving equal pro rata shares of a 20% equity of NewCo. *Cf. ICG Global Loan Fund 1 DAC v. Boardriders, Inc.,* 2022 N.Y. Slip Op. 33492(U), 17, 2022 WL 10085886, at *6 (Sup. Ct., N.Y. Cnty. Oct. 17, 2022) (finding plaintiffs sufficiently alleged a section of the contract "was amended in bad faith to prevent plaintiffs from suing to enforce their rights under the Credit Agreement [] and their right to bring this action is not barred by the pre-amended version" of the contract).

Dated: New York, New York
        November 21, 2022

Respectfully submitted,

By : _ /s/ Laura Davis Jones_
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com

- and -

GIBSON, DUNN & CRUTCHER LLP

Mary Beth Maloney (*pro hac vice*)
David Salant (pending *pro hac vice*)
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Email: mmaloney@gibsondunn.com
       dsalant@gibsondunn.com

*Attorneys for the Lender Defendants*