**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TOWN SPORTS INTERNATIONAL, LLC*, et al.*,<br><br>      Debtors. | Chapter 11<br><br>Case No. 20-12168 (CTG)<br><br>(Jointly Administered) |
| KENNEDY LEWIS MASTER FUND LP and KENNEDY LEWIS PARTNERS MASTER FUND II LP,<br><br>      Plaintiffs,<br><br>      v.<br><br>ABRY PARTNERS, LLC, *et al.*,<br><br>      Defendants. | Adv. Pro. No. 22-50406 (CTG) |

## PRELIMINARY OBSERVATIONS REGARDING THIS COURT'S SUBJECT-MATTER JURISDICTION

This lawsuit was originally filed as a breach of contract action in the U.S. District Court for the Southern District of New York. The plaintiffs were lenders to debtor Town Sports International, LLC under a credit agreement and related security agreement.[1] The defendants in this action are (a) other lenders under the same agreements, who collectively held a majority of the issuance,[2] and (b) Wilmington

---

[1] Plaintiffs Kennedy Lewis Partners Master Fund LP and Kennedy Lewis Partners Master Fund II LP are referred to as the "minority lenders."

[2] These defendants, Abry Partners, LLC; Apex Credit Partners, LLC; CIFC Asset Management LLC; Ellington Management Group, L.L.C.; and Trimaran Advisors Management, L.L.C. are referred to as the "lender defendants." These lender defendants were also members of the Ad Hoc Term Lender Group in the main bankruptcy case.

Savings Fund Society, which was the administrative agent under the credit agreement and collateral agent under the security agreement.[3]

The debtors owned and operated health and fitness clubs in the Northeast and Mid-Atlantic areas.[4]  Their gyms were forced to close in March 2020 as a result of the onset of the pandemic.  They filed for bankruptcy protection in this Court in September 2020.

During the bankruptcy case, the debtors negotiated a sale of substantially all of the debtors' assets to a new entity, that was to be owned in part by the lenders under the credit agreement and in part by Tacit, which was to capitalize the new entity with $47.5 million in cash.[5]  The lenders were to contribute $80 million of the $167 million outstanding under their loans, which the new entity would use as a credit bid to acquire the debtors' assets.

The debtors filed a motion to approve the sale (subject to an auction) on October 2, 2020.[6]  This Court approved the bid procedures by order dated October 9, 2020.[7] That order set a deadline of October 26, 2020 for the receipt of any competing bids

---

[3] Wilmington Savings Fund Society, FSB is referred to as the "agent defendant."

[4] The factual background set forth herein is taken from the allegations of the complaint, originally filed in the U.S. District Court for the Southern District of New York, SDNY No. 21-04690 (ALC) (May 25, 2021), which is referred to as the complaint.  Other pleadings filed on the docket of the U.S. District Court for the Southern District of New York in this litigation are cited as "New York D.I.__."

[5] Tacit Capital LLC is referred to as "Tacit."  The proposed buyer was to be a newly formed entity named New TSI Holdings, Inc., and is referred to as "Buyer."

[6] *In re Town Sports International, LLC*, No. 20-12168 (CTG) (Bankr. D. Del. Oct. 2, 2020), D.I. 160.  Citations to materials on the docket of the main bankruptcy case are hereafter cited as "Main Case D.I. __."

[7] Main case D.I. 208.

and, were the debtors to receive a qualifying competing offer, the auction was to occur on October 28, 2020. The sale hearing was to take place on November 3, 2020.

On October 26, 2020, however, the debtors filed a notice on the docket indicating that they had not received any other qualifying offers, and thus that the auction would not proceed.[8] On November 4, the Court issued an order authorizing the sale to Buyer.[9]

On November 27, 2020, however, the Ad Hoc Term Lender Group filed an emergency motion seeking injunctive relief.[10] In their motion, they report that after the Court's entry of the sale order it "became clear that Tacit would be unable to meet any of its funding commitments" to capitalize Buyer.[11] The Ad Hoc Term Lender Group took the position that it had not yet contributed the $80 million of its debt to Buyer, and therefore the sale could not close. The debtors, however, pointed out in opposition to the emergency motion (filed two days later, on November 29, 2020) that the sale order stated that the lenders had already contributed their $80 million of debt to the Buyer at the time of the Court's entry of the sale order.[12] Accordingly, they contended that whether or not Tacit had capitalized the Buyer with the $47.5 million that the lenders had anticipated, the Buyer was able to, and legally obligated to, close on the credit-bid sale with the debtors.

---

[8] Main case D.I. 347.

[9] Main case D.I. 639.

[10] Main case D.I. 710.

[11] *Id.*¶ 20.

[12] Main Case D.I. 714 at 3-4.

This Court held a hearing on the emergency motion on November 30, 2020. The Court agreed with the debtor's construction of the sale order, concluding that "the sale order makes it clear that the preliminaries, i.e. the transfer of the right to credit bid, have already occurred and we're not awaiting that happening."[13]  Judge Sontchi added that "this was a fundamental part of the bid that was the stalking horse bid that went out for competing bids, the auction was canceled, [the] court had a sale hearing, nobody objected, nobody raised this issue, I entered an order, we're going to closing and now all of sudden the term lenders say we never gave the authority for the buyer to credit bid, it's just too late."[14]

Judge Sontchi added that "the documents made it clear that contribution already – and to the extent that it didn't already occur pursuant to some of the documents being exchanged among the parties I deem[] it as a matter of law and to the extent I have to exercise equitable power here [–] did occur."[15]  The Court accordingly entered an order denying the emergency motion, which included a statement that "the Prepetition Agent, on behalf of the Prepetition Lenders, has transferred the right to credit bid the Credit Bid Consideration to the Buyer, and the Buyer is authorized to contribute the Credit Bid Consideration at closing of the

---

[13] Nov. 30, 2020 Hr'g Tr. at 27.

[14] *Id.*

[15] *Id.*

sale."[16]  On December 18, 2020, this Court entered an order confirming the debtors' plan of reorganization.[17]  That plan became effective on December 22, 2020.[18]

In May 2021, the minority lenders brought this lawsuit in the U.S. District Court for the Southern District of New York.  The theory of the lawsuit is that the actions taken by the lender defendants and the agent defendant, in credit bidding the $80 million of debt, violated the terms of the applicable agreements.  The complaint accordingly asserts three claims of breach of contract against the defendants and seeks to recover monetary damages resulting from the alleged breaches.  According to the facts as alleged in the complaint, there is not complete diversity between the plaintiffs and defendants.  The only asserted basis for federal jurisdiction is that it is "related to the Debtor's Chapter 11 proceeding," such that it would fall within the related-to jurisdiction of 28 U.S.C. § 1334(b).[19]

Defendants moved the district court to dismiss the complaint or, in the alternative, to transfer it to the District of Delaware.[20]  Those motions do not, however, challenge the district court's subject-matter jurisdiction over the action.  By order dated August 17, 2022, the district court granted the motions to transfer, directing that the case be transferred to the District of Delaware.[21]

---

[16] Main Case D.I. 721.

[17] Main Case D.I. 828.

[18] Main Case D.I. 849 at 1.

[19] *See Kennedy Lewis Partners Master Fund LP v. Abry Partners,* No. 21-04690 (S.D.N.Y. May 25, 2021) D.I. 1 ¶ 21.  Citations to materials on the New York docket are hereafter cited as "New York D.I. __."

[20] *See* New York D.I. 47, 48, 50, 51.

[21] New York D.I. 61.

The U.S. District Court for the District of Delaware docketed the case on August 24, 2022. Because the complaint purports to invoke the district court's bankruptcy jurisdiction, by order dated September 6, 2022 the district court referred the case, in accordance with 28 U.S.C. § 157(a) and the district court's February 29, 2012 standing order, to the bankruptcy court. The parties have submitted the briefing on the motions to dismiss filed in New York to this Court and have filed supplemental memoranda.[22] A hearing on the motion to dismiss is scheduled for December 13, 2022 at 1:00 p.m.

In preparing for that hearing, however, it occurred to the Court that its subject-matter jurisdiction over this action was at least subject to doubt. The Court accordingly thought it appropriate to set forth the following preliminary reactions on the question of subject-matter jurisdiction.

As the Third Circuit has explained, "federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."[23] Subject-matter jurisdiction "can never be forfeited or waived."[24] A federal court must therefore satisfy itself that it has subject-matter even when, as is true here, "all parties assume that it does."[25]

---

[22] D.I. 19-22.

[23] *Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) (internal citation and quotation omitted).

[24] *Id.*

[25] *Id.*

"Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11."[26] The first of those categories, a case "under" title 11, is the main bankruptcy case – the one initiated by the filing of the petition.[27] For there to be subject-matter jurisdiction over other proceedings in bankruptcy, they must fit into one of the other three categories. The Third Circuit's recent decision in *Essar Steel* described the scope of those categories:

> A case 'arises under' [the Bankruptcy Code] when the cause of action is based on a right or remedy expressly provided by the Bankruptcy Code. Proceedings 'arising in' a case under [the Bankruptcy Code] include matters that, though not explicitly mentioned in the Code, would not exist outside of bankruptcy. Related matters are generally causes of action under state law that are imported into the bankruptcy because of their impact on the size of the debtor's estate, and hence the distribution to the debtor's creditors.[28]

The only basis for subject-matter jurisdiction expressly invoked in the complaint is the last of these three categories – the "related to" jurisdiction. But it is by no means obvious how that category is implicated. The debtor is not a party to the case, and it is far from obvious how the resolution of the case might have an effect on the bankruptcy estate. Moreover, as the *Essar Steel* court explained, the scope of the related-to jurisdiction is sharply limited after a plan confirmation. Rather than

---

[26] *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).

[27] *Id.*

[28] *In re Essar Steel Minnesota LLC*, 47 F.4th 193, 197 (3d Cir. 2022) (quoting *In re Weiand Auto. Indus.*, 612 B.R. 824, 854 (Bankr. D. Del. 2020)) (brackets in original; internal footnote omitted).

extending to any action that might have a conceivable effect on the estate, after confirmation the related-to jurisdiction applies only where there is a "close nexus" between the lawsuit and the confirmed plan. Where there is such a close nexus, such as "when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate."[29]

To be sure, it is true that Judge Carter of the Southern District of New York, in his decision transferring the case to this Court, commented that the claims at issue fell within the "arising in" jurisdiction because they involved an interpretation of Judge Sontchi's prior orders.[30] But the Third Circuit's decision in *Stoe* makes clear that claims that "arise in" a bankruptcy case are ones that "by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."[31] Here, the claims are for breach of a prepetition contract. Applying the rationale of *Stoe*, it is at least unclear to this Court that these claims fit within the "arising in" jurisdiction under applicable Third Circuit precedent.

And while it is true that resolution of the dispute will require the Court to construe Judge Sontchi's prior orders, that is because those orders may give rise to a defense. That is, defendants argue that the preclusive effect of Judge Sontchi's orders

---

[29] *Id.* at 198 (quoting *In re Resorts International, Inc.*, 372 F.3d 154, 168-169 (3d Cir. 2004)).

[30] *Kennedy Lewis Partners Master Fund LP v. Abry Partners*, S.D.N.Y. No. 21-04690, Aug. 17, 2022 Hr'g Tr. at 9.

[31] 436 F.3d at 218.

in this bankruptcy case operate to bar the lawsuit. The usual principle, however, is that jurisdiction over a claim is based on the allegations of the complaint, not on whether a federal statute or an order of a federal court will bear on a potential defense.[32]

The Court accordingly directs that the parties be prepared to address, at the December 13 hearing, the question whether this Court has subject-matter jurisdiction over this action. The Court emphasizes that the points set out above are only preliminary observations and the Court is entirely open to hearing that any (or all) of the points set out above is incorrect. To the extent it is helpful to the parties, the Court's going-in assumption is that, because the Court has an independent obligation to assure itself of its own jurisdiction and that such jurisdiction cannot be manufactured by the parties' consent or litigation conduct, no party can now be estopped from setting forth a position on subject-matter jurisdiction by virtue of what they may have argued in the Southern District of New York. That said, to the extent the parties are aware of contrary authority, they are welcome to advance any argument they deem appropriate. To the extent the parties would like to address these issues in writing, they are permitted (but not required) to do so, as long as any supplemental briefs directed to that issue are filed by 5 p.m. on December 9, 2022.

The Court certainly appreciates the parties' interest in obtaining a prompt resolution of these disputes. There is no doubt that dismissing the case on the ground

---

[32] *Id.* at 217 ("The fact that federal bankruptcy law is implicated as a defense to Stoe's claim, does not change the fact that Stoe's claim itself does not 'arise under' title 11. The Bankruptcy Code did not create Stoe's cause of action.")

that there is no federal jurisdiction would be quite impractical.  Bankruptcy courts are regularly required to resolve disputes over the meaning of credit agreements and are certainly capable of doing so.  And the parties here have a dispute that requires resolution.  Accordingly, this Court would dismiss this case only if it concluded that it had no choice: that is, only if the straightforward application of settled legal principles to the facts of this case required that result.

The Court adds, however, that even if it were to lack subject-matter jurisdiction to consider the minority lenders' claim for breach of the credit agreement (and emphasizing that it is open to considering the parties' arguments on that question), it would still be the case that the Court would have jurisdiction to interpret and enforce its previous orders.  The Supreme Court held in *Travelers* that a bankruptcy court had subject-matter jurisdiction, under this principle, to enjoin a state-court lawsuit that violated the terms of an injunction it entered in connection with confirmation of a plan of reorganization.[33]  As the Third Circuit explained in *Essar Steel*, *Travelers* stands for the proposition that a federal court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders."[34]

Accordingly, even if this Court lacked jurisdiction to hear the minority lenders' claim seeking damages for breach of contract, the Court believes it would still have jurisdiction to hear an action seeking a declaratory judgment that such a claim for breach of contract would or would not be barred by the preclusive effect of this Court's

---

[33] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

[34] *Essar Steel*, 47 F.4th at 197.

prior orders. Indeed, because *that* is the issue that occupies the large majority of the parties' briefing on the pending motion to dismiss, the Court is open to the possibility (without prejudice to the right of any party to argue to the contrary) that if such a declaratory judgment complaint were filed promptly, the Court would be able to consider that issue (treating the existing briefing as briefing on dueling motions for summary judgment) as scheduled on December 13.

The Court looks forward to the parties' responses, whether filed by 5 p.m. on December 9 or provided at the December 13 hearing.

Dated: November 29, 2022

_____

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE