UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE

---------------------------------------------------------x

In re:

TOWN SPORTS INTERNATIONAL, LLC

Debtors.

Chapter 11

Bankruptcy Case No. 20-12168 (CTG)
Jointly Administered

---

KENNEDY LEWIS PARTNERS MASTER FUND LP AND KENNEDY LEWIS PARTNERS MASTER FUND II,

    Plaintiffs,

  -against-

ABRY PARTNERS, LLC, APEX CREDIT PARTNERS LLC, CIFC ASSET MANAGEMENT LLC, ELLINGTON MANAGEMENT GROUP, L.L.C., TRIMARAN ADVISORS MANAGEMENT, L.L.C., AND WILMINGTON SAVINGS FUND SOCIETY, FSB,

    Defendants.

Adv. Pro. No. 22-50406 (CTG)

---------------------------------------------------------x

**THE LENDER DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
IN REPLY TO PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO THE
<u>LENDER DEFENDANTS' MOTION TO DISMISS</u>**

Defendants Abry Partners, LLC, Apex Credit Partners LLC, CIFC Asset Management LLC, Ellington Management Group, L.L.C., and Trimaran Advisors Management, L.L.C. (collectively, the "Lender Defendants") respectfully submit this Memorandum of Law in Reply to Plaintiffs' Opening Supplemental Brief in Further Support of Their Opposition to Defendants' Motion to Dismiss, dated November 21, 2022 (ECF No. 20, "Pls.' Br."), and in response to the Court's Preliminary Observations Regarding This Court's Subject-Matter Jurisdiction, dated November 29, 2022 (ECF No. 26).

**ARGUMENT**

The time has come to end Kennedy Lewis' years long campaign to circumvent sale orders entered by this Court for which they were on notice and to which they did not object. While the Lender Defendants respect this Court's suggestion that there may be another jurisdiction in which this action could be resolved, there is nothing preventing this Court from acting in a manner that finally resolves this action. As addressed in Part I, the Court has "arising in" subject matter jurisdiction because Plaintiffs' claims challenge the result of a bankruptcy court sale order, which they allege triggered a breach of contract; such a claim could not exist outside the bankruptcy proceeding and challenges the very validity of Judge Sontchi's prior rulings. Alternatively, as addressed in Part II, the Court could issue a declaratory judgment that Plaintiffs' claims are barred by Judge Sontchi's rulings, either by reading such a request as implied within Plaintiffs' Complaint, permitting Plaintiffs to amend their complaint to add this claim, or permitting Defendants to file a brief complaint. Finally, as addressed in Part III, Plaintiffs' Supplemental Brief relies on three wholly inapposite cases involving no-action clauses and transaction structures not remotely similar to the no-action clause or *pro rata* distribution in this action. For these reasons, the Lender Defendants' motion to dismiss should at long last be granted.

**I.    The Court Has Subject Matter Jurisdiction Over This Dispute Because Plaintiffs' Claims Exist as a Result of, and Call Into Question, The Court's Prior Sale Orders.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1334's "arising in" provision. "Proceedings arising in a case under title 11 refer to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case." *In re FormTech Indus., LLC*, 439 B.R. 352, 357 (Bankr. D. Del. 2010). This Court has "arising in" subject matter jurisdiction because Plaintiffs' claims challenging the propriety and result of a bankruptcy sale order cannot exist without that proceeding, and indeed call into question the final ruling and order of that proceeding. Moreover, Judge Sontchi and Judge Carter each took steps evincing their view that this dispute fell within federal subject matter jurisdiction, and this Court should not disturb those conclusions.

The Third Circuit has explained that civil causes of action indirectly triggered by acts of bankruptcy courts fall within the court's "arising in" jurisdiction because they "implicate the integrity of the bankruptcy process." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260 (3d Cir. 2007) (holding that claim against court-appointed accountant brought under theory that debtors' assets were sold at below-market values fell under "arising in" jurisdiction). Applying this rule, Delaware bankruptcy courts have held that civil claims turning on the interpretation of sale orders are within the scope of "arising in" jurisdiction. For example, in *In re FormTech Indus., LLC*, the parties disputed whether certain "setoff and recoupment rights" were extinguished by the underlying sale order. 439 B.R. 352, 359 (Bankr. D. Del. 2010). The bankruptcy court concluded it had jurisdiction over the civil litigation because the court was required to interpret its sale order "and determine what assets were actually sold, what contracts were assumed, and what claims against the assets were extinguished." *Id*. In *In re FAH Liquidating Corp.*, the court held that "arising in" jurisdiction applied when a trustee alleged that defendants were violating sale

agreements approved by the bankruptcy court, based on the rationale that "rights that flow from the Plan and from the Purchase Agreement which the Court approved" implicated the integrity of the bankruptcy court. 567 B.R. 464, 470 (Bankr. D. Del. 2017).

Plaintiffs' theory of this case turns entirely on their interpretation of Judge Sontchi's sale orders, thus implicating the very sale process Judge Sontchi oversaw. As Plaintiffs now acknowledge, their complaint is not about whether the right to credit bid was duly transferred to NewCo (it was), but rather that Judge Sontchi's rulings did not literally address "whether an instruction by the Lender Defendants had been given to the Agent." Pls.' Br. 3. While this assertion is flatly wrong and, frankly, non-sensical (the "instruction" question under the at-issue contracts *was* incontrovertibly and expressly presented to Judge Sontchi; compliance with a federal court order cannot breach a contract; and, given the Court's orders, the sale would have closed regardless of the rendering of a formal "instruction"), Plaintiffs' notion that *Judge Sontchi's order* caused Defendants to breach a contract would "have no existence outside the bankruptcy case" because the cause of action accrued only as a consequence of the bankruptcy case. *In re FormTech Indus.*, 439 B.R. at 357. Plaintiffs also "implicate[] the integrity of the bankruptcy process," *Seven Fields Dev. Corp.*, 505 F.3d at 258, by implicitly asserting that Judge Sontchi issued a defective or incomplete sale order. It is the prerogative of this federal bankruptcy court to rectify Plaintiffs' misapprehension of what consequences flow from prior orders on this docket.[1]

Two further factors militate in favor of exercising subject matter jurisdiction here. *First*, Judge Sontchi expressly reserved this Court's jurisdiction over "any and all disputes concerning or relating to the Sale [of Town Sports]" including "interpret[ing], implement[ing], and enforc[ing]

---

[1] Moreover, the Lender Defendants respectfully submit that the resolution of this action could affect the post-confirmation administration of the Debtors, given the Lender Defendants' reservation of their right to claim indemnification from the Debtors under the governing credit agreement. *See* ECF No. 1180 (Sept. 21, 2021 reservation of rights); *In re Seven Fields*, 505. F.3d at 265.

3

the provisions of this Sale Order," Dkt. 639 ¶ 45, evincing his view that such matters should be addressed by this Court. *See The Shaw Grp., Inc. v. Bechtel Jacobs Co., LLC* (*In re The IT Grp., Inc.*), 350 B.R. 166, 170 (Bankr. D. Del. 2006) (finding subject matter jurisdiction when "[t]he Court retained jurisdiction to 'interpret, implement, and enforce the provisions of th[e] Sale Order'").

*Second*, in taking jurisdiction over this dispute, concluding that the claims were "core" to the ongoing bankruptcy proceeding, and granting Defendants' motion to transfer the SDNY Action, Judge Carter clearly concluded he had subject matter jurisdiction. *See* ECF No. 22, Ex. E at 9. The Court should harmonize its ruling on the same issue with the federal court that addressed the matter first-in-time: a game of "judicial ping-pong" is problematic where "there are no facts that suggest there was any 'clear conviction of error' necessary to justify disregarding the transferor court's decision to send the case here." *In re Swan Transp. Co.*, 596 B.R. 127, 136 (Bankr. D. Del. 2018).

## II. A Declaratory Judgment Is Appropriate Even If the Court Finds It Does Not Have Subject Matter Jurisdiction Over Plaintiffs' Claims.

In the event the Court continues to doubt its subject matter jurisdiction over this dispute as currently formulated, the Lender Defendants agree with this Court's observation (*see* ECF No. 22 at 10–11) that, in all events, this Court may issue a declaratory judgment that a claim for breach of contract in this context is barred by the preclusive effect of the Court's prior orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). The Lender Defendants respectfully suggest three ways by which a cause of action for declaratory judgment may be placed before this court.

*First*, the Court may view a request for any declaratory relief necessary to the survival of Plaintiffs' claims as implied in Plaintiffs' currently operative Complaint. *See* Compl. ¶ 70(iv)

4

(seeking "[a]ny other and further relief as the Court deems just, proper, or equitable under the circumstances"). Using its equitable powers, the Court may issue a declaratory judgment as to the preclusive effect of its prior orders. Should Plaintiffs seek relief from yet another forum in the face of that judgment, it would do so at its peril.

*Second*, the Court may permit Plaintiffs to amend their Complaint to add a cause of action for declaratory judgment, and treat the existing briefing as briefing on cross-motions for summary judgment on this issue, *see* Fed. R. Civ. P. 12(d), as the Court suggested when it noted that it could adjudicate "an action seeking a declaratory judgment that such a claim for breach of contract would or would not be barred by the preclusive effect of this Court's prior orders." ECF No. 26 at 10–11. On December 7, the Lender Defendants invited Plaintiffs to amend their Complaint in this regard, and offered to stipulate to Plaintiffs' motion to amend to add a claim for declaratory relief. Plaintiffs declined the offer, insisting that Defendants would have to seek such relief. Plaintiffs' response appears to concede that a federal court has no subject matter jurisdiction over a case they have spent two years prosecuting in federal court, and for which Defendants have been forced to unnecessarily expend legal fees and costs as a result of Plaintiffs' defective lawsuit.

*Third*, the Court may permit Defendants to file a Complaint seeking a declaratory judgment on this issue, and treat the existing briefing as briefing on cross-motions for summary judgment on this issue.

## III. Plaintiffs' Newly Proffered Caselaw is Wholly Unrelated To This No Action Clause.

None of the three newly-decided cases Plaintiffs identify in their Opening Brief—*LCM XXII Ltd. v. Serta Simmons Bedding, LLC* ("*Serta*"), *In re: TPC Grp. Inc.* ("*TPC*"), *ICG Global Fund 1 DAC v. Boardriders Inc.* ("*Boardriders*")—does anything to support their claim that their action should be exempted from the Security Agreement's no-action clause. Pls.' Br. 3–5. Each case is wholly inapposite because it deals with entirely distinguishable no-action clauses and forms

of transaction in which the majority lenders and minority lenders received *different* treatment. Here, the at-issue no-action clause is broad; no attempt was made to amend it; no "sacred rights" of Plaintiffs are properly at issue; and the equity of NewCo received by all lenders in the transaction was undisputedly shared on the same terms, *pro rata*, among all lenders, including the majority and minority lenders.

*First*, Plaintiffs mischaracterize *Serta* as allowing *any* minority lenders to overcome *any* no-action clause so long as the plaintiffs allege a breach of contract. Pls.' Br. 5. In *Serta*, the court found that the relevant no-action clause was narrow based on its specific language. 2022 WL 953109 at*14 (S.D.N.Y. Mar. 29, 2022). The applicable no-action clause provided by its plain language: "no Secured Party shall have any right individually to realize upon any of the Collateral or to enforce the Loan Guaranty. . . ." *Id.* The court found that the claims fell outside of the scope of that no-action clause because the plaintiffs were not seeking to recover on collateral or for payment under a loan agreement. *Id.*

Here, in contrast, the language in the Parties' governing no-action clause is broader and says that only the Collateral Agent, acting upon the instruction of a majority of Town Sports' secured lenders, may bring an action to **enforce the Security Agreement**. Security Agreement § 7.1. Thus, unlike in *Serta*, Plaintiffs' claims to enforce the Security Agreement vis-à-vis a breach of contract (where they are literally asking for enforcement of the terms of the Security Agreement) fall within the plain language of the no-action clause. Dkt. 22, Ex. B (Lender Defs.' Opening Br. in SDNY Action), at 18–19.

*Second*, Plaintiffs misapply Your Honor's holdings in *TPC*. In *TPC*, the plaintiffs alleged the underlying transaction violated the minority lenders' "sacred rights" by altering their *pro rata* distribution rights without consent. 2022 WL 2498751 (Bankr. D. Del. July 6, 2022). Plaintiffs

argue that under *TPC*, the Security Agreement's "no-action" clause "cannot be read to preclude claims that the loan agreement provides to minority lenders" and that their claims that Lender Defendants violated the Agreement are, therefore, outside the scope of the no-action clause. Pls.' Br. 4. But Plaintiffs omit the discussion of "sacred rights" that drives the reasoning and result in *TPC*. *See TPC*, 2022 WL 2498751 at *8–9. For example, in *TPC*, one "sacred right" of the underlying indenture required that *all* lenders consent to any provision that affects any lenders' right to *pro rata* distribution. *Id.* at *3. Your Honor noted that "such a provision would be rendered meaningless, however, if any action to enforce the right were subject to the provisions of the no-action clause." *Id*. at *9.

Here, Plaintiffs argument fails to identify any rights "expressly grant[ed] to individual holders" in the Security Agreement. *Id.* at *8. Instead, Plaintiffs restate their (precluded) claim that "only the Agent can credit bid the Loan pursuant to an instruction of the Lender Defendants." Pls.' Br. 5. Plaintiffs' logic assumes the mere existence of a Security Agreement gives them a "claim" "provid[ed] to minority lenders" as described in *TPC*. Pls.' Br. 4 (arguing Plaintiffs can bring claims against the Lender Defendants "for violating the Agreements' terms"). Not so. Whereas here, a minority lender agrees to a no-action clause and this clause is unamended, the minority lender cannot subsequently assert a breach of contract claim without first identifying an individual protection expressly granted within the text of the agreement. Plaintiffs cannot do so because they were treated the same way as the majority lenders.

*Third*, Plaintiffs cite *Boardriders* as an example of a suit not barred by a no-action clause, but ignore that the text of that no-action clause, and the facts of the underlying transaction, are entirely distinct. In *Boardriders*, the majority lenders amended the no-action clause specifically to block plaintiffs from challenging the transaction being undertaken pursuant to the credit

7

agreement. 2022 N.Y. Slip Op. 33492(U), 17, 2022 WL 10085886, at *3–4 (Sup. Ct., N.Y. Cnty. Oct. 17, 2022). The plaintiffs alleged these amendments, to which they never signed on, violated their "sacred rights" provisions requiring consent of all lenders. *Id.* at *6. The court ruled the plaintiffs sufficiently alleged defendants amended the no-action clause in bad faith and without their consent. *Id.* Thus, the court declined to bar suit on the basis of the amended no-action clause. Even with this ruling, the court still considered the no-action clause of the original credit agreement prior to its amendment to determine if the unamended no-action clause would bar suit. The text of the unamended no-action clause prohibited only actions concerning "Collateral or any other property of the Borrower." *Id.* Therefore, the court concluded only based on the language of the pre-amended no-action clause that it did not apply to the breach of contract claim.

Neither of *Boardriders*' bases for circumventing a no-action clause is applicable. The validity of the no-action clause here is not in question. Plaintiffs consented to its terms as part of the original credit agreement, and it was never amended. Unlike the pre-amended no-action clause in *Boardriders*, which covered only collateral and property claims, the no-action clause here broadly bars individual actions to enforce the Security Agreement—precisely what Plaintiffs attempt.

Plaintiffs seem to acknowledge that the facts of each of their newly cited cases go against them. *See* Pls.' Br. 5 n.11. Backtracking, they say *Serta*, *TPC*, and *Boardrider* emphasize "the paramount importance of the words of the contracts." Pls.' Br. 5. Lender Defendants agree. Plaintiffs' claims are barred by the plain language of the no-action clause, and Plaintiffs fail to argue that any exception applies to them.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice all causes of action against the Lender Defendants.

8

Dated: December 9, 2022

Respectfully submitted,

By: /s/ Laura Davis Jones
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com

- and -

GIBSON, DUNN & CRUTCHER LLP


Mary Beth Maloney (*pro hac vice*)
David Salant (*pro hac vice*)
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Email: mmaloney@gibsondunn.com
        dsalant@gibsondunn.com

*Attorneys for the Lender Defendants*